# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| CHRISSY ISRAEL MAZZEO, | Case No.: 2:08-cv-01387-RLH-PAL |
| Plaintiff, | **ORDER** |
| vs. | (Motion for Summary Judgment–#169; |
| JAMES ARTHUR "JIM" GIBBONS; | Motion for Summary Judgment–#224; |
| SIGMUND "SIG" ROGICH; LAS VEGAS | Motion for Summary Judgment–#226) |
| METROPOLITAN POLICE DEPARTMENT; | |
| BILL YOUNG; DOES 1–20, | |
| Defendants. | |

In this Order, the Court considers three motions for summary judgement filed by Defendant James "Jim" Arthur Gibbons (#169), Defendants Las Vegas Metropolitan Police Department ("Metro") and Bill Young (#224) (collectively referred to as "Metro Defendants"), and Defendant Sigmund "Sig" Rogich (#226). In considering these motions, the Court has also reviewed the opposition, replies, joinders, and exhibits submitted by the parties. (*See* Dkt. ##170–71, 177, 190, 200, 212–14, 225, 233, 246, 253.)

## BACKGROUND

This dispute arises from Plaintiff Chrissy Mazzeo's allegations that Defendant Jim Gibbons, the current governor of Nevada, battered, falsely imprisoned, and attempted to sexually

abuse her on October 13, 2006. Mazzeo also alleges Gibbons and Rogich conspired with Metro Defendants after the incident to deprive her of her constitutional rights. For a detailed account of Mazzeo's factual allegations and claims, the Court directs the parties to its June 29, 2009 Order (Dkt. #85), *Mazzeo v. Gibbons*, 649 F.Supp.2d 1182 (D. Nev. 2009).

Mazzeo commenced this lawsuit on October 14, 2008. Her Second Amended Complaint asserts four claims: (1) deprivation of civil rights pursuant to 42 U.S.C. § 1983 (First Amendment Retaliation and Fourteenth Amendment Equal Protection), (2) battery, (3) false imprisonment, and (4) intentional infliction of emotional distress. (Dkt. #88, July 7, 2009.) During the course of discovery, the parties stipulated to dismiss Defendants Pennie Mossett-Puhek (Dkt. #139, Jan. 5, 2010) and Donald J. Campbell (Dkt. #215, May 4, 2010). Gibbons, Rogich, Young, and Metro remain as Defendants. After several extensions, discovery finally closed on May 17, 2010. (Dkt. #159, Order, Feb. 2, 2010.)

The remaining Defendants have now moved for summary judgment. On March 5, 2010, Gibbons filed his Motion for Summary Judgment (Dkt. #169), to which Rogich and Metro Defendants joined. Metro Defendants filed their First Motion for Summary Judgment (Dkt. #224) after the close of discovery. Finally, Rogich filed his First Motion for Summary Judgment (Dkt. #226). After a succession of fugitive documents, motions for reconsideration, and motions to strike (Dkt. ## 239, 240, 241, 243, 244, 245, 246, 248, 252), the Court can now address Defendants' summary judgment motions. For the reasons discussed below, the Court grants in part and denies in part Defendants' motions for summary judgment.

**DISCUSSION**

**I.    Summary Judgment Legal Standard**

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is a sufficient evidentiary basis upon which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). However, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

   The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). "The mere existence of a scintilla of

evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

Gibbons asks the Court to grant summary judgment on Mazzeo's common law claims of battery and intentional infliction of emotional distress. Metro Defendants ask for summary judgment on the 42 U.S.C. § 1983 Equal Protection claim. Finally, all remaining Defendants ask for summary judgment on the 42 U.S.C. § 1983 claim for First Amendment Retaliation. The Court will address each of Mazzeo's claims in turn.

## II.     Battery claim against Gibbons

To succeed on a battery claim, a plaintiff must show that the defendant intended to cause harmful or offensive contact, and caused such contact to occur. *Burns v. Mayer*, 175 F.Supp.2d 1259, 1269 (D. Nev. 2001) (citing Restatement (Second) of Torts, §§ 13, 18 (1965)); *see also Olivero v. Lowe*, 995 P.2d 1023 (Nev. 2000). Gibbons urges the Court to grant summary judgment on Mazzeo's battery claim by applying the "physical facts rule." The Eighth Circuit explained a general scenario where use of the physical facts rule may be appropriate:

> Where undisputed physical facts are entirely inconsistent with and opposed to testimony necessary to make a case for the plaintiff, the physical facts must control. No jury can be allowed to return a verdict based upon oral testimony which is flatly opposed to physical facts, the existence of which is incontrovertibly established.

*Wood v. United States*, 342 F.2d 708, 713–14 (8th Cir. 1965). The Ninth Circuit briefly discussed this rule over fifty years ago, but did so with great hesitation. "The 'physical facts' rule is restricted to those situation[s] in which the testimony of the witnesses relied upon was virtually impossible on the uncontradicted physical facts." *Granat v. Schoepski*, 272 F.2d 814, 815 (9th Cir. 1959) (citing *Kan. City Pub. Serv. Co. v. Shephard*, 184 F.2d 945, 947 (10th Cir. 1950)).

In this case, Gibbons asserts that the physical facts rule precludes Mazzeo's battery claim because the incident could not have occurred in the manner she alleges. She claims Gibbons lead her into the first floor of the Howard Hughes Center parking garage where he grabbed both her arms suddenly and without invitation, pushed her against the wall, and threatened to sexually

4

1  assault her.  Mazzeo alleges the incident occurred within full-view of surveillance cameras
2  mounted on the walls of the garage.  However, Gibbons submitted surveillance video from the
3  garage and forensic analysis that seemingly rebuts Mazzeo's allegations because neither party
4  appears on the videos.  Nevertheless, eye-witnesses testified that Gibbons and Mazzeo were
5  walking together in the McCorrmick & Schmick parking lot and on a sidewalk near the Residence
6  Inn (located directly adjacent to the parking garage).  (Dkt. #200, Opp'n Ex. 33, Garcia Dep.
7  37–38; Ex. 47, Creasy Voluntary Statement.)  Furthermore, multiple camera angles are blacked-
8  out in the videos, indicating that multiple cameras did not record any activity on the night of the
9  incident.  (Dkt. #169, Mot. Ex. 9, Stuchman Surveillance Videotape Analysis Ex. 6-A.)
10         The Court finds that the physical facts rule does not apply to this claim.  The
11 contradiction between the eyewitness testimony and surveillance video create triable issues of fact
12 for a jury to decide because reasonable minds could differ about the absence of Mazzeo and
13 Gibbons on the surveillance video.  Mazzeo has carried her burden and established a genuine issue
14 of fact by submitting eyewitness testimony that contests the analysis of the surveillance video.
15 Accordingly, the Court denies Gibbons' motion for summary judgement on the battery claim.

16 **III.    Intentional Infliction of Emotional Distress Claim against Gibbons**

17         To establish a prima facie claim for intentional infliction of emotional distress in
18 Nevada, a plaintiff must show: (1) defendant acted in an extreme and outrageous manner, (2)
19 defendant intended to or recklessly disregarded the probability that his conduct would cause
20 plaintiff emotional distress, (3) plaintiff actually suffered extreme or severe emotional distress, and
21 (4) defendant's conduct caused plaintiff's distress.  *Miller v. Jones*, 970 P.2d 571, 577 (Nev.
22 1998).  Conduct is extreme or outrageous if it is atrocious, beyond all possible bounds of decency,
23 and utterly intolerable.  *Churchill v. Barach*, 863 F.Supp. 1266, 1275 (D. Nev. 1994).  To establish
24 severe emotional distress, the plaintiff must demonstrate that the stress is so intense that no
25 reasonable person could be expected to endure it—general physical or emotional discomfort is
26 insufficient.  *Watson v. Las Vegas Valley Water Dist.*, 378 F.Supp.2d 1269, 1279 (D. Nev. 2005)

AO 72
(Rev. 8/82)

(citing *Burns*, 175 F.Supp.2d at 1268). Whether the evidence of emotional distress is "sufficient (i.e. severe) to allow the claim to advance to the trier of fact and whether defendants conduct may reasonably be regarded as so extreme and outrageous as to permit recovery are questions for the Court to answer." *Alam v. Reno Hilton Corp.*, 819 F.Supp. 905, 911 (D. Nev. 1993) (internal citation omitted).

Mazzeo alleges that she has endured emotional distress in the form of fear, anxiety, insomnia, nightmares, and migraine headaches. As evidence of her emotional distress, Mazzeo provides testimony that she moved out of her home, shuffled herself around to various hotels to avoid detection, and ultimately fled the state. Gibbons argues that, even if these symptoms were severe enough to satisfy the severe emotional distress requirement, Mazzeo has no objectively verifiable evidence to prove the severity of her distress. The Nevada Supreme Court has held that a plaintiff must obtain "objectively verifiable indicia of the severity of [her] emotional distress," *Miller*, 970 P.2d at 577, which generally requires some form of medical or psychiatric treatment. *Burns*, 175 F.Supp.2d at 1268 (finding that psychiatric care and prescription medication for depression and anxiety were collectively sufficient to overcome summary judgment); *see also Watson*, 378 F. Supp. 2d at 1279; *Kennedy v. Carriage Cemetery Serv. Inc.*, --- F.Supp. ---, No. 2:08-cv-01102-GMN-RJJ, 2010 WL 2926083, at *6–7 (D. Nev. July 19, 2010). If a plaintiff fails to seek medical or psychiatric assistance, her subjective deposition testimony is insufficient to establish evidence of severe emotional distress. *Miller*, 970 P.2d at 577.

Assuming *arguendo* that Gibbons' conduct satisfied the other required elements, the Court finds that Mazzeo has not shown sufficient evidence of extreme or severe emotional distress to defeat summary judgment. The only evidence of emotional distress that Mazzeo presents is her own subjective testimony and that of her sister, Ana Freteluco. Furthermore, Mazzeo admits that she did not seek any psychological, psychiatric, or any other type of mental health care as a result of this incident, even though she saw a therapist prior to October 2006 to assist her through her divorce, cancer, and alopecia treatment. (Dkt. #169, Mot. Ex. 1, Mazzeo

Dep. 172:22–173:11, 177:9–180:14, 757:20–758:15.)  Although sympathetic to the inconvenience and discomfort Mazzeo may have experienced in connection with this incident, the Court cannot find that Mazzeo and Freteluco's testimony is objectively verifiable evidence of severe emotional distress.  Without objectively verifiable evidence, Mazzeo would be unable to carry her ultimate burden of persuasion at trial.  *Nissan Fire & Marine Ins.*, 210 F.3d at 1102.  Accordingly, the Court grants Gibbons' motion for summary judgment on intentional infliction of emotional distress.

**IV.     Mazzeo's Section 1983 claims**

42 U.S.C. § 1983 provides a mechanism for the private enforcement of substantive rights conferred by the Constitution and federal statutes.  *Graham v. Connor*, 490 U.S. 386, 393–94 (1989).  To succeed on a § 1983 claim, a plaintiff must show that a defendant deprived her of a constitutional or federal right while acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48–49 (1988).  Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred."  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotations omitted).

Pursuant to § 1983, Mazzeo alleges Defendants violated her rights under two constitutional theories: First Amendment Retaliation and Fourteenth Amendment Equal Protection.  She alleges Metro Defendants intentionally treated her differently from other women who filed sexual assault claims because, rather than investigate a potential crime, Young used the police investigation to retaliate against her and to clear Gibbons' name prior to the gubernatorial election.   As a preliminary matter, the Court must address the manner in which Mazzeo combines her factual allegations in relation to both constitutional theories.

Numerous federal courts have precluded plaintiffs' assertions of Retaliation claims as Equal Protection claims.  *E.g., Kirby v. City of Elizabeth City, NC*, 388 F.3d 440,447 (4th Cir. 2004) (finding that claims based upon a plaintiff's allegation that she was treated differently in Retaliation for her speech are, "at their core, free-speech retaliation claims that do not implicate

the Equal Protection Clause") (internal citation omitted).  The "right to be free from retaliation may be vindicated under the First Amendment . . . , but not the equal protection clause." *Boyd v. Ill. State Police*, 384 F.3d 888, 898 (7th Cir. 2004); *see also Grossbaum v. Indianapolis-Marion County Bldg. Auth.*, 100 F.3d 1287, 1296 n.8 (7th Cir. 1996) (the Equal Protection Clause "does not establish a general right to be free from retaliation"); *Ratliff v. Dekalb Cnty.*, 62 F.3d 338, 341 (11th Cir. 1995) ("no clearly established right exists under the equal protection clause to be free from retaliation").

        The Court concludes that Mazzeo's allegations impermissibly combine her First Amendment Retaliation and Fourteenth Amendment Equal Protection claims.  As a result, the Court must distinguish any facts related to Retaliation from its analysis of Mazzeo's Equal Protection claim.  The Court will proceed to evaluate each constitutional theory independently and will only evaluate the allegations of Retaliation under the First Amendment.

        **A.**    **14th Amendment Equal Protection Claim Against Metro Defendants**

        The Equal Protection Clause of the Fourteenth Amendment mandates that no State shall "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  As the Supreme Court explained long ago, Equal Protection "requires that all persons subjected to . . . legislation shall be treated alike, under like circumstances and conditions, both in the privileges conferred and in the liabilities imposed."  *Enquist v. Or. Dep't of Agric.*, 553 U.S. 591, 602 (2008) (citing *Hayes v. Missouri*, 120 U.S. 68, 71–72 (1887)).  When those who appear similarly situated are nevertheless treated differently, the Equal Protection Clause requires at least a rational reason for the difference, to assure that all persons subject to legislation or regulation are indeed being "treated alike, under like circumstances and conditions."  *Enquist*, 553 U.S. at 602.  If an allegedly discriminatory classification burdens the exercise of a fundamental right or disadvantages a suspect class, a district court must apply a strict scrutiny analysis.  *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)).

### 1. The Class-of-One Doctrine

The Equal Protection Clause protects not only groups, but individuals who would constitute a "class of one." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Thus, when it appears that government has singled out an individual as a class-of-one, the specter of arbitrary classification is fairly raised." *Id.* To succeed on a class-of-one claim, a plaintiff bears the burden to prove: (1) she has been intentionally treated differently than others similarly situated; and (2) there is no rational basis for the difference in treatment. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005).

When evaluating a class-of-one claim, a district court must distinguish between discretionary and objective governmental decision-making because this doctrine was intended for use in cases where the government departs from an objective standard. *Enquist*, 553 U.S. at 602–03. In *Olech,* the Supreme Court determined that a municipality violated Olech's right to equal protection under the class-of-one doctrine because the municipality demanded a 33-foot easement from Olech instead of the 15-foot easements it routinely required. 528 U.S. at 563. The Court applied the class-of-one doctrine to Olech's claim because the municipality's deviation from its customary requirement could be readily assessed. *Id.* at 565. However, the Supreme Court narrowed the class-of-one doctrine in *Enquist* by finding it inapplicable to subjective and individualized government employment decisions. 553 U.S. at 604. The Supreme Court explained:

> There are some forms of state action . . . which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be treated alike, under like circumstances and conditions is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

*Id.* at 603. Therefore, because some types of state action necessarily involve subjective differences in treatment that are difficult to articulate or quantify, such discretionary decision-making should

9

not be supervised by federal courts. *See Jennings v. City of Stillwater*, 383 F.3d 1199, 1210–11 (10th Cir. 2004) (analyzing *Olech* and finding that, "unless carefully circumscribed, the concept of a class-of-one equal protection claim could effectively provide a federal cause of action for review of almost every executive and administrative decision made by state actors.")

Although *Enquist* addressed state action specifically within the context of public employment, numerous district and circuit courts have extended its rationale to other contexts in which plaintiffs challenge discretionary state action under a class-of-one theory.[1] For example, the Eighth Circuit applied *Enquist*'s rationale to police investigative decisions in *Flowers v. City of Minneapolis* where the plaintiff asserted a class-of-one claim by alleging that police officers intentionally singled him out for harassment. 558 F.3d 794, 799 (8th Cir. 2009). However, the Eighth Circuit found that "[a] police officer's decisions regarding whom to investigate and how to investigate are matters that necessarily involve discretion." *Id.* In light of *Enquist*, the Eighth Circuit concluded that "a police officer's investigative decisions remain subject to traditional class-based equal protection analysis," but "may not be attacked in a class-of-one equal protection claim." *Id.* at 799–800.

The Court agrees with the sound reasoning of other district and circuit courts and concludes that the class-of-one doctrine should not extend to forms of state action which involve discretionary decision-making. Accordingly, the Court must determine whether Metro Defendants employed discretionary decision-making when they evaluated Mazzeo's allegations against Gibbons, and then determine whether the class-of-one doctrine properly extends to Mazzeo's Equal Protection claim.

/

---

[1] *E.g.*, *Flowers v. City of Minneapolis*, 558 F.3d 794 (8th Cir. 2009) (police officer's investigative decisions), *reh'g & reh'g en banc denied*; *Douglas Asphalt Co. v. Quore, Inc.*, 541 F.3d 1269 (11th Cir. 2008) (government contracting); *United States v. Moore*, 543 F.3d 891 (7th Cir. 2008) (prosecutorial discretion); *JDC Mgmt., LLC v. Reich*, 644 F.Supp.2d 905 (W.D. Mich. 2009) (state's enforcement of lottery statutes); *Occhionero v. City of Fresno*, 2008 WL 2690431, at *9 (E.D. Cal. 2008) (city's enforcement of code violations).

**2.     Analysis**

Mazzeo asserts a class-of-one claim by alleging Metro Defendants intentionally treated her differently from other women who filed sexual assault claims by failing to properly investigate a potential crime because of Gibbons' political position and affiliations. The essence of Mazzeo's claim, therefore, is to ask the Court to evaluate the evidence that Metro Defendants gathered during its investigation and decide whether or not they properly exercised their discretion in handling the investigation. However, such an evaluation would be an improper assessment of Metro Defendants' discretionary decision-making. *See Enquist*, 553 U.S. at 608–09 (concluding that the Equal Protection Clause does not require the displacement of managerial discretion by judicial supervision). The Court therefore finds that Mazzeo cannot maintain a class-of-one claim because she improperly challenges discretionary governmental decision-making, *i.e.*, police investigative decisions.

In so holding, the Court does not suggest that discretionary governmental decision-making may never run afoul of the Equal Protection Clause—it merely concludes that Mazzeo's use the class-of-one doctrine is improper. Decisions based upon "an unjustifiable standard such as race, religion, or other arbitrary classification"—traditional suspect classes—are intolerable under the Equal Protection Clause. *Oyler v. Boles*, 368 U.S. 448, 456 (1962); *see also Silveira v. Locker*, 312 F.3d 1052, 1087–88 (9th Cir. 2002). However, Mazzeo does not allege membership in a traditionally suspect class because she identifies herself in a class with "all other sexual assault victims." (Dkt. #88, Compl. ¶ 101.)

**i.     Similarly Situated Individuals**

Even if a class-of-one theory was proper in this case, Mazzeo fails to bring forth evidence showing that similarly situated individuals were treated differently. Mazzeo defines similarly situated individuals as "all other sexual assault victims." (*Id.*) The Equal Protection Clause requires Mazzeo to provide compelling evidence of other similarly situated persons who were *in fact* treated differently. *Jennings*, 383 F.3d at 1213–14 (finding that it is imperative for a

1  class-of-one plaintiff to provide a "specific and detailed account" of other individuals' preferred
2  treatment so that the court may determine "who was similarly situated with whom") (internal
3  quotations omitted).  The level of similarity between plaintiffs and the persons with whom they
4  compare themselves must be extremely high.  *Purze v. Village of Winthrop Harbor*, 286 F.3d 452,
5  455 (7th Cir. 2002) (to succeed, plaintiffs must demonstrate that "they were treated differently than
6  someone who is prima facie identical in all relevant respects"); *see also, Sundram v. Cnty. of Santa
7  Barbara*, 39 Fed. Appx. 533, 535 (9th Cir. 2002).  However, Mazzeo simply relies on her
8  allegations that Metro Defendants treated her differently than all other sexual assault victims
9  without proffering evidence of other victims' treatment.
10  After carefully considering this element, the Court concludes that the gravamen of
11  Mazzeo's allegations is not that Metro Defendants treated *her* differently than any other woman
12  would have been, but that Metro Defendants treated *Gibbons* differently than any other suspect
13  would have been.  In other words, nothing in the record suggests that Metro Defendants would
14  have acted any differently if another woman would have made sexual assault allegations against
15  Gibbons.  The Equal Protection Clause and § 1983 do not provide a basis for such a claim.
16  Consequently, Mazzeo fails to set forth triable issues of fact regarding the difference in treatment
17  of similarly situated persons.

                    **ii.   Rational Basis**

19  Mazzeo's Equal Protection claim also falls short under a rational basis analysis.
20  Disparate government treatment will survive rational basis scrutiny "as long as it bears a rational
21  relation to a legitimate state interest."  *Patel v. Penman,* 103 F.3d 868, 875 (9th Cir. 1996).  To
22  prevail on the rational basis element of a class-of-one claim, a plaintiff must negate "any
23  reasonably conceivable state of facts that could provide a rational basis for the classification."
24  *Lauth v. McCollum*, 424 F.3d 631, 633–34 (7th Cir. 2005) (quoting *Bd. of Trustees v. Garrett*, 531
25  U.S. 356, 367 (2001)).  Accordingly, the rational basis inquiry is a very lenient one.  *RUI One
26  Corp. v. City of Berkeley*, 371 F.3d 1137, 1156 (9th Cir. 2004).  Thus, "[g]overnmental action only

1    fails rational basis scrutiny if no sound reason for the action can be hypothesized." *Garrett*, 531
2    U.S. at 367.

3    Mazzeo maintains that Metro Defendants had no rational basis for their actions
4    because their actions were motivated by ill will.  She attempts to support this allegation with
5    deposition testimony indicating that Detective Barker was assigned the investigation specifically
6    because Gibbons was involved (Dkt. #269, Ex. 83, Barker Dep. 9:14–23) and with other witness
7    testimony that, according to Mazzeo, should have sparked further investigation of the incident.
8    However, this testimony fails to negate any reasonable set of facts that could provide a rational
9    basis for their actions.  The Court can hypothesize a number of reasons other than ill will to
10   explain why Metro Defendants may have assigned Barker to the case.  For example, Metro
11   Defendants may have wanted a more experienced detective on this case or a detective who was
12   familiar with the demands of a high-profile case and would not be intimidated by extensive press
13   coverage.  As for Metro Defendants' decision not to charge Gibbons or further investigate, a lack
14   of physical evidence and inconsistent witness statements could have been legitimate reasons for
15   their decision.  The Court would expect no less from Metro Defendants in situations where they
16   decide an investigation had produced insufficient evidence to prove criminal charges beyond a
17   reasonable doubt.  Therefore, Mazzeo fails to negate any reasonably conceivable set of facts for
18   the purported difference in treatment and Metro Defendants' actions pass rational basis scrutiny.

19   In sum, Mazzeo's Equal Protection claim fails because she cannot properly
20   maintain a class-of-one theory.  The Court finds that Mazzeo's allegations under the class-of-one
21   doctrine improperly challenge Metro Defendants' discretionary decisions in handling the police
22   investigation.  But even if a class-of-one theory was proper, she has still failed to produce evidence
23   that similarly situated persons were treated differently or negate a rational basis for the alleged
24   difference in treatment.  Consequently, Mazzeo lacks sufficient evidence to succeed on her Equal
25   Protection claim.  The Court therefore grants Metro Defendants' motion for summary judgment on
26   this claim.

### B.     First Amendment Claim Against All Defendants

Governmental "action designed to retaliate against and chill political expression strikes at the heart of the First Amendment." *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986). To succeed on a § 1983 claim under a First Amendment Retaliation theory, a plaintiff must show that defendants committed the alleged acts while acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48–49 (1988) (citations omitted). A defendant in a § 1983 suit acts under color of state law when exercising power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *McDade v. West*, 223 F.3d 1135, 1139-40 (9th Cir. 2000). In other words, a person acts under color of state law when "he abuses the position given to him by the State." *Atkins*, 487 U.S. at 50.

In this case, Metro and Young (in his former capacity as Sheriff of Metro) are undisputedly state actors. *See id.* ("a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law"). Therefore, the Court need only evaluate Metro and Young's alleged retaliatory acts. However, Mazzeo must show that Rogich and Gibbons acted under color of state law because neither were traditional state actors at the time of the incident. (Dkt. #85, Order 12 n.1.) As a result, the Court will first assess whether Mazzeo has adequately shown that Gibbons and Rogich may incur § 1983 liability as private individuals, and then addresses the sufficiency of Mazzeo's Retaliation claim.

### 1.     State-Action Requirement for Gibbons and Rogich

While generally not applicable to private individuals, a § 1983 action can lie against a private party "where there is significant state involvement in the action." *Johnson v. Knowles*, 113 F.3d 1114, 1118 (9th Cir. 1997) (internal citation omitted). The criteria for fairly attributing state action "lack rigid simplicity. . . . [N]o one fact can function as a necessary condition across the board for finding state action; nor is any set of circumstances absolutely sufficient, for there may be some countervailing reason against attributing activity to the government." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295–96 (2001). Therefore, to fairly

attribute conduct to the state, a district court makes a fact-specific inquiry as to whether a sufficiently close nexus exists between the state and the challenged conduct. *Id.* at 295 (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).

The Supreme Court has articulated four distinct tests for determining whether a private individual's actions amount to state action: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test. *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003). Satisfaction of any one test is sufficient to find state action. *Johnson*, 113 F.3d at 1118. In this case, Mazzeo alleges that Rogich and Gibbons amount to state actors because they conspired with Metro Defendants to violate her First Amendment rights. The most applicable test for an alleged conspiracy is the joint action test, which the Court will now discuss.

Under the joint action test, a private individual may act under color of state law if he conspires with the State or its agents as "a willful participant in joint action." *Kirtley*, 326 F.3d at 1092 (citation omitted). To prove a conspiracy between the police and a private individual, a plaintiff must show "an agreement or 'meeting of the minds' to violate constitutional rights." *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002) (internal quotation omitted). To be liable under § 1983, "each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Id.* Whether defendants were involved in an unlawful conspiracy is generally a factual issue and should be resolved by the jury so long as there is a possibility that the jury can infer from the circumstances that the alleged conspirators had a meeting of the minds and, thus, reached an understanding to achieve the conspirators' objectives. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970). "The ability and opportunity to conspire, while insufficient alone, constitute circumstantial evidence of actual participation in the conspiracy." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1547 (9th Cir. 1989) (citing *Adickes*, 398 U.S. at 158).

Mazzeo alleges that Defendants engaged in a conspiracy to accomplish a common objective: to minimize any political harm to Gibbons from the alleged incident. Prior to October

15

1    2006, Young, Rogich, and Gibbons were well acquainted.  Rogich raised money and consulted for
2    Young's 2003 campaign for sheriff.  Sometime after he was elected sheriff, Young met then
3    congressman Gibbons.  Prior to the alleged incident, Young publicly endorsed Gibbons'
4    gubernatorial candidacy.  Rogich served as a senior political advisor to Gibbons' campaign.  After
5    the alleged incident, telephone records reveal numerous conversations between Rogich and Young,
6    Gibbons and Young, and Metro employees and Young.  The day after the alleged incident, Rogich
7    and Young spoke at frequent intervals.  During these conversations, Young inquired about the
8    events of the previous evening and Rogich requested status updates on the investigation.  Rogich
9    testified that he gathered information from Young "to protect the sensationalized nature of the
10   story" and protect Gibbons as a candidate. (Dkt. #246, Ex. 76, Rogich Dep. 43:3–4.)  Young
11   indicated to Rogich that Metro detectives would "reinterview [Mazzeo] and get this thing figured
12   out."  (Dkt. #224, Ex. L., Young Dep. 28:3–4.)  Young then spoke directly to Gibbons to inform
13   him of the allegations and arrange for Metro investigators to interview Gibbons.

14             From these facts alone, a jury could infer that Gibbons and Rogich were wilful
15   participants in a joint action with Metro Defendants to support § 1983 liability.  The record
16   supports an inference that Defendants shared a common objective of minimizing Gibbons'
17   political harm.  The evidence also shows that Defendants participated in multiple private telephone
18   conversations during which they discussed the incident and Mazzeo's allegations.  Viewing the
19   parties' frequent communication and their common objective in the light most favorable to
20   Mazzeo as the nonmoving party, the Court concludes that Mazzeo has raised a genuine issue of
21   material fact regarding whether Defendants came to an agreement or meeting of the minds to
22   violate her constitutional rights.  The Court therefore finds that Mazzeo has sufficiently shown that
23   Rogich and Gibbons acted under color of state law to survive summary judgment on such basis.

24             **2.    Retaliation**

25             Unlike most of the Ninth Circuit's First Amendment Retaliation cases, this case
26   does not involve an employment or other contractual relationship between the plaintiff and

16

1   governmental officials, *e.g. Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917 (9th Cir. 2004), a
2   claim of retaliatory prosecution, *e.g. Skoog v. Cnty. of Clackamas*, 469 F.3d 1221 (9th Cir. 2006),
3   or a Retaliation claim by a regulated entity, *e.g. CarePartners, LLC v. Lashway*, 545 F.3d 867 (9th
4   Cir. 2008). However, the Ninth Circuit has repeatedly allowed ordinary citizens such as Mazzeo
5   to allege Retaliation claims against state actors. *E.g. Ostad v. Or. Health Sci. Univ.*, 327 F.3d 876
6   (9th Cir. 2003) (medical resident); *Mendocino Envtl. Center v. Mendocino Cnty.*, 192 F.3d 1283
7   (9th Cir. 1999) (environmental protestors). Although the test for First Amendment Retaliation
8   under § 1983 varies slightly depending upon the plaintiff's relationship to the government entity,
9   each test requires that a governmental official act and do so with the intention of stifling protected
10  speech. *See Rayford v. Omura*, 400 F.Supp.2d 1223, 1230 (D. Haw. 2005).

11       For an ordinary citizen to establish a First Amendment Retaliation claim, a plaintiff
12  must show that: (1) she was engaged in constitutionally protected activity; (2) defendant's action
13  caused plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing
14  to engage in that activity; and (3) defendant's adverse actions were substantially motivated against
15  plaintiff's exercise of constitutionally protected conduct. *Id.* (citing *Keenan v. Tejada*, 290 F.3d
16  252, 258 (5th Cir. 2002) (collecting cases)).[2] Defendants do not dispute whether Mazzeo engaged
17  in constitutionally protected speech by filing a police report and criticizing Metro Defendants'
18  handling of the investigation. *See Doe v. San Mateo Cnty.*, 2009 WL 735149, *5 (N.D. Cal. Mar.
19  19, 2009); *see also Foraker v. Chaffinch*, 501 F.3d 231, 236 (3rd Cir. 2007). Therefore, the Court
20  will only address Defendants' allegedly adverse actions and motivations.

21       In this case, Mazzeo has established a prima facie claim that Defendants violated
22  her First Amendment rights by engaging in retaliatory acts after she reported the alleged incident.

---

[2] *See also Mendocino Envtl. Center v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) (proper inquiry is whether government actions would chill a person of ordinary firmness from future First Amendment activities); *Sloman v. Tadlock*, 21 F.3d 1462, 1469 (9th Cir. 1994) (plaintiff must show that defendants' actions "deterred or chilled [plaintiff's] political speech and such deterrence was a substantial or motivating factor in [defendant's] conduct").

17

For example, Mazzeo provides Metro Defendants statements to the press wherein they told reporters she recanted her allegations and they described the incident as a misunderstanding and a result of Mazzeo's alcohol consumption. Instead, she told Detectives Hnatuick and Barker that she did not want to prosecute the matter because she felt it would become a "three ring circus" (Dkt. #200, Opp'n Ex. 54, Det. Hnatuick's Report 4, Oct. 16, 2006) and because she did not want to go up against someone as powerful as Gibbons (Dkt. #224, Mot. Ex. H., Hnatuick Dep. 93). Mazzeo also presents evidence to show Young held a press conference on October 26, 2006, in order to negatively portray her to the public after she criticized Metro's handling of the investigation through her former attorney, Richard Wright. In addition, Mazzeo offers evidence suggesting Rogich had Pennie Puhek lie about the incident to protect Gibbons by having Puhek sign a statement that contained a pre-prepared description of events. Rogich and his staff drafted an initial statement (Dkt. #224, Ex. T, Rogich Dep. 41–42), which Puhek did not sign because it contained information about the campaign (Dkt. #200, Opp'n Ex. 3, Puhek Dep. 47). Puhek eventually signed a second statement that still included language which she did not write. Thus, Mazzeo has set forth specific facts suggesting that Defendants took several actions against her to neutralize the political damage her police report would cause to Gibbons' gubernatorial campaign.

Next, Mazzeo has adequately shown that Defendant's actions were substantially motivated by her protected speech. For instance, Young urged Southern Nevadans to consider the political ramifications and timing of Mazzeo's allegations in a press interview. Young also testified that he held the October 26, 2006 press conference to counter Mazzeo's "hokey story" (Dkt. #224, Ex. L., Young Dep. 112:12) and her public criticism of Young and Metro. Rogich testified that he thought Mazzeo's allegations had the "earmarks of a political dirty trick." (Dkt. #224, Ex. T, Rogich Dep. 89:17–18.) Thus, Mazzeo has demonstrated triable issues of fact to indicate Defendant's actions were substantially motivated by her protected speech.

In the Court's view, summary judgment is inappropriate on this claim. A reasonable jury could find that Defendants' actions were sufficient to deter a person of ordinary

firmness from future First Amendment activity and substantially motivated by Mazzeo's protected speech. Consequently, the Court finds that Mazzeo has set forth specific facts for trial and denies Defendants' motions for summary judgment on the First Amendment Retaliation claim.

### 3.   Qualified Immunity

The doctrine of qualified immunity protects government officials from liability based upon their performance of discretionary functions to the extent their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known at the time of the conduct. *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009). Courts considering whether an official is shielded by qualified immunity consider two questions: (1) whether the facts alleged show the officer's conduct violated a constitutional right, and (2) whether the right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

If Mazzeo is correct—that is, if a jury finds that Metro Defendants intended to retaliate against her for filing a police report or intended to chill her criticisms of the investigation—then Metro Defendants' conduct violated clearly established constitutional rights to free speech and freedom from retaliation under the First Amendment. Furthermore, a reasonable official would have understood that such actions violated Mazzeo's First Amendment rights. Viewing all facts and drawing all inferences in favor of Mazzeo as the nonmoving party, the Court concludes that Metro Defendants are not entitled to qualified immunity.

/
/
/
/
/
/
/
/

AO 72
(Rev. 8/82)

# CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Defendants' Motions for Summary Judgment (Dkt. ##169, 224, 226) are GRANTED in part and DENIED in part as follows:

- DENIED as to Mazzeo's claim against Gibbons for battery.
- GRANTED as to Mazzeo's claim against Gibbons for intentional infliction of emotional distress.
- GRANTED as to Mazzeo's § 1983 claim against Metro and Young for Fourteenth Amendment Equal Protection.
- DENIED as to Mazzeo's § 1983 claim against all Defendants for First Amendment Retaliation.

Dated: October 27, 2010.

_____
**ROGER L. HUNT**
**Chief United States District Judge**